UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TSFR BURGER, LLC,

    Plaintiff,

v.

Case No. 19-12060
District Judge Victoria A. Roberts
Magistrate Judge Anthony P. Patti

STARBOARD GROUP OF GREAT
LAKE, LLC AND ANDREW LEVY,

    Defendants.
_____/

# ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [ECF No. 3]

## I. INTRODUCTION

On February 6, 2019, TSFR Burger, LLC ("TSFR") and Starboard Group of Great Lakes, LLC ("Starboard") entered into an Asset Purchase Agreement ("APA"). Under the APA, TSFR agreed to purchase fifty-six (56) Wendy's restaurant franchises from Starboard. (Doc # 1-2; Pg ID 16).

Before the sale closed on May 20, 2019, the parties agreed to five amendments to the APA. Of relevance to this dispute are the Fourth and Fifth Amendments. Under the Fourth Amendment, Starboard agreed to make certain repairs prior to closing or – if not completed by closing – to reimburse TSFR for any costs incurred by it to complete the repairs. Further,

1

of the 56 restaurants, twenty-two (22) had Brinks' safes where Starboard would make daily deposits of its revenues. Under the Fifth Amendment, the parties agreed that the deposits were to be credited to TSFR's accounts, rather than Starboards.

TSFR alleges that Starboard failed to (1) perform repairs at the restaurants prior to closing and (2) remit and credit TSFR for daily revenues it deposited after the closing.

On July 12, 2019, TSFR filed suit against Starboard and its managing member, Andrew Levy ("Levy"), for conversion under Michigan common law and MCL 600.2919a(1)(a), breach of contract, and fraud in the inducement.

Starboard moves to dismiss under Federal Rule of Civil Procedure 9(b) and 12(b)(6); it says TSFR fails to state claims upon which relief can be granted because it does not plead facts sufficient to allege breach of contract, fraud in the inducement, and conversion.

The Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion to dismiss.

## II. BACKGROUND

Before closing, Starboard was the licensee of Brinks' safes located at the 22 Wendy's franchises. (Compl. ¶10). Starboard deposited daily

2

revenues into the Brinks' safes, and its accounts were directly credited. (*Id.* ¶11). This was supposed to change at or before closing so that deposits would be credited to TSFR instead. (*Id.* ¶ 6). This was not done; The parties failed to reprogram the safe and deposits continued to be credited to Starboard after closing. (*Id.* ¶10). The parties dispute who is at fault for not changing the name of the licensee. However, that dispute has no relevance for purposes of deciding this motion.

Over the course of negotiations, the parties agreed to multiple amendments to the APA. (Doc # 9; Pg ID 195). On May 8th, the parties agreed to the Fourth Amendment; Starboard agreed to provide a "Letter of Credit" to TSFR in the amount of $1,000,000.00 as security for Starboard's post-closing indemnity obligations. (Doc # 9; Pg ID 201).

On May 17th, Starboard agreed to a Fifth Amendment; Starboard promised to remit and credit any money deposited by TSFR into the Brinks' safes. (Doc # 9; Pg ID 206). Starboard agreed to (i) email TSFR the report received from Brinks' identifying TSFR's Brinks' Deposits credited to Starboard and (ii) return TSFR's Brinks' deposits by wire transfer. *See* APA, Fifth Amendment Section 7.

On May 22 – two days after closing – TSFR reminded Starboard of its obligation to remit money daily. (Compl. ¶12). Starboard did not respond.

3

The following day, TSFR again contacted Starboard and provided balances due for TSFR's Brinks' deposits. (*Id.* ¶13). Starboard disputed the amount due. (*Id.* ¶14).

On May 28, Starboard had still not wired money. (*Id.* ¶17). TSFR expressed frustration with Starboard's lack of compliance. (*Id.* ¶18). It also notified Starboard that one of TSFR's general managers had mistakenly used Starboard deposit slips to deposit additional TSFR money. (*Id.* ¶17). TSFR contacted Starboard and Levy personally to demand return of the money. Neither responded. (*Id.* ¶18).

In addition to Starboard's alleged failure to return the money, Starboard agreed to make certain repairs at the restaurants prior to closing. (*Id.* ¶23). Pursuant to Section 9(c) of the Fourth Amendment to the APA, if Starboard failed to perform these repairs, then, upon notice from TSFR, Starboard was obligated to pay TSFR the costs of making these repairs in the amounts set forth in Exhibit B of the Fourth Amendment. (Doc # 9; Pg ID 201). Starboard refused to pay for these repairs.

Following Starboard's refusal to remit money and pay for repairs, TSFR made a formal demand to Starboard to remit TSFR's funds deposited into Starboard's account. (*Id.* ¶29). TSFR also demanded funds from escrow – related to certain equipment that allegedly required maintenance or repair

4

– but it never received any funds. (*Id.* ¶29). Finally, Starboard informed TSFR that it would not remit any money and referred TSFR's counsel to its litigation counsel. (*Id.* ¶19).

In the motion to dismiss, Defendants claim: 1) the economic loss rule bars recovery for conversion and fraud in the inducement; 2) TSFR consented to the transfer of funds; 3) TSFR failed to properly specify funds to be remitted; 4) TSFR failed to plead with particularity; 5) any fraudulent representations were negated by the APA; 6) the merger clause in the APA negated TSFR's fraud claim; and 7) TSFR did not properly allege a plausible breach of contract claim.

### III. LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests a complaint's legal sufficiency. The federal rules require that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Indeed, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible where the facts

allow the court to infer that the defendant is liable for the misconduct alleged. *Id.* This requires more than "bare assertions of legal conclusions"; a plaintiff must provide the "grounds" of his or her "entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007); *Twombly*, 550 U.S. at 555 (while detailed factual allegations are not required, a pleading must offer more than "labels and conclusions" or "a formulaic recitation of the elements of the cause of action"). Ultimately, the question is "'not whether [the plaintiff] will ultimately prevail' . . . but whether [the] complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011).

In deciding a motion under Rule 12(b)(6), the court must construe the complaint in the light most favorable to the plaintiff, accept as true all well-pled factual allegations, and draw all reasonable inferences in favor of the plaintiff. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). The court "may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein." *Id.*

**IV.  ANALYSIS**

TSFR alleges three claims against both Starboard and Levy: count I (statutory/common law conversion), count II (breach of contract), and count III (fraud in the inducement).

TSFR never alleges – nor does it proffer – any evidence that an agreement with Levy exists. TSFR alleges only that: "[t]he APA, as amended, is a valid and binding contract between TSFR and Starboard." (Compl. ¶44).

TSFR also fails to make fraud allegations against Levy. TSFR states broadly that "Starboard and Levy" made representations with certain knowledge. (Compl. ¶¶ 56-57). The complaint does not describe Levy's role in the alleged fraud in the inducement.

Finally, as discussed more fully below, none of TSFR's conversion claims against either defendant can survive because the claims are based only on contract claims.

Therefore, count I and count II are dismissed with prejudice against Levy; count III is dismissed without prejudice against Levy.

**A. TSFR Sufficiently Pled A Claim For Breach of Contract Against Starboard**

TSFR alleges that Starboard breached the APA and its Amendments by failing to remit money to TSFR daily. (*Id.* ¶56(a)). Starboard claims the APA authorized it to collect and retain the funds, and provided TSFR an

7

appropriate remedy. Starboard further argues that the allegations set forth in the complaint fail to state a plausible claim.

To state a breach of contract claim under Michigan law, the plaintiff must first establish the existence of a valid contract. *Eastland Partners Ltd. Partners v. Vill. Green Mgmt. Co.* (In re Brown), 342 F.3d 620, 628 (6th Cir.2003). The parties do not dispute the validity of the APA. Instead, they dispute their respective responsibilities.

"Once a valid contract has been established, a plaintiff seeking to recover on a breach of contract theory must then prove by a preponderance of the evidence the terms of the contract, that the defendant breached the terms of the contract, and that the breach caused the plaintiff's injury." *Id.*; *see also Farha v. Cogent Healthcare of Mich., P.C.*, 164 F.Supp.3d 974, 986, 2016 WL 795882, at *7 (E.D.Mich. Feb. 29, 2016).

The court finds that the breach of contract allegations, when viewed in the light most favorable to TSFR, reasonably support a plausible link between Starboard's alleged breach and stated injury. The APA states:

> [E]ach business day following Closing, Seller shall (i) email to Buyer the report received from Brinks' that morning with the amounts that have been deposited into Seller's accounts that day by Brinks', and (ii) pay to Buyer by wire transfer to Buyer's account on that same day the amounts set forth in such report.

8

(APA, Fifth Amendment, Section 7). Starboard acknowledges the terms of Section 7. But, Starboard disputes that it violated the APA because it says TSFR had the right to draw down from the indemnity funds held if it failed to remit deposits.

At this stage of the litigation, TSFR does not need to give much detail concerning damages it sustained from the alleged breach. *See Plastech Holding Corp. v. WM Greentech Auto. Corp.*, 14–cv–14049, 2016 WL 93423, at *2 (E.D.Mich. Jan. 8, 2016). The allegations state that TSFR was deprived of the "value" from not receiving daily deposits pursuant to the APA, (Compl. ¶¶ 49, 52-54), and that it incurred thousands of dollars in out-of-pocket expenses. The allegations make it reasonable to conclude that discovery will likely shed light on the breach claim. A sufficient breach of contract claim is pled.

### B. TSFR's Fraud In The Inducement Allegations Are Not Pled With Particularity Under Fed.R.Civ.P. 9(b)

Starboard says the fraud in the inducement count is not specific enough to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). The Court agrees.

Under Fed.R.Civ.P. 9(b), a party must state "with particularity" the circumstances constituting the fraud. Plaintiff must "allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud" or, "the 'who, what, when, where, and how' of the alleged fraud." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (citations omitted).

To establish fraud in the inducement, a party must show: "(1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth and as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage." *Custom Data Solutions, Inc. v. Preferred Capital, Inc.*, 274 Mich. App. 239, 243 (2006).

TSFR's fraud in the inducement allegations merely recite the elements of the claim and rely on conclusions or generalizations; this is not enough to withstand a motion to dismiss. *See* Compl. ¶¶55-60.

TSFR overlooks the "where" of the alleged fraud; that is, it fails to address or allege facts regarding the specific communications or channel

through which Starboard made its alleged misrepresentations. Although TSFR attempts to identify "when" Starboard made the misrepresentations, TSFR merely identifies May 17, 2019 – which is the date Starboard agreed to the Fifth Amendment – not the dates Starboard made the alleged misrepresentations.

The complaint does not describe each defendants' role in the alleged fraud in the inducement. The allegations set forth are not sufficient to alert the defendants "as to the particulars of their alleged misconduct," so that they can respond. *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.,* 532 F.3d 496, 504 (6th Cir. 2008).

TSFR failed to state a claim for relief; Count III is dismissed without prejudice.

### C. TSFR's Common Law and Statutory Conversion Claims Are Not Distinct From Its Breach of Contract Claim

Starboard argues that TSFR cannot plausibly state claims for statutory or common law conversion because TSFR's conversion claims are not distinct from their breach of contract claims, as the claims arise entirely from TSFR's contract rights. TSFR states that conversion occurred when defendants refused to remit money – to which Starboard had no right or title

11

and was only a temporary fiduciary – and is distinct from its breach of contract claim.

Importantly, a conversion claim "cannot be brought where the property right alleged to have been converted arises entirely from the [plaintiff's] contractual rights." *Llewellyn-Jones*, 22 F. Supp.3d at 788. "[T]he law in Michigan is well-settled that an action in tort requires a breach of duty separate and distinct from a breach of contract." *Brock v. Consolidated Biomedical Labs.*, 817 F.2d 24, 25 (6th Cir. 1987).

Because TSFR's cause of action arises from the breach of the contract, it cannot maintain either a common law or statutory conversion claim. *See Devon Indus. Grp., LLC v. Demrex Indus. Servs., Inc.,* 11–10313, 2012 WL 4839013 (E.D.Mich. Oct. 11, 2012) (no conversion claim "when the claim was based upon funds held pursuant to a contract and where the conversion claim was not based on some duty independent of the contract").

### 1. Common Law Conversion

Common law conversion under Michigan law "is established by showing any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Nedschroef Detroit Corp. v. Bemas Enterprises LLC*, 106 F. Supp. 3d 874, 886 (E.D. Mich. 2015), *aff'd*, 646 Fed. Appx. 418 (6th Cir.

2016) (citation and internal quotation marks omitted). "Conversion may occur when a party properly in possession of property uses it in an improper way, for an improper purpose, or by delivering it without authorization to a third party." *Id.* (quoting *Dep't of Agric. v. Appletree Mktg. LLC*, 485 Mich. 1, 14 (2010)). This includes the "willful disregard of [another's] title." *Nelson & Witt v. Texas Co.,* 256 Mich. 65, 70, 239 N.W. 289 (Mich.1931).

A claim for common-law conversion of money cannot be maintained unless the defendant had a specific obligation to return money entrusted to him. *Stewart Title Guar. Co.,* 2008 WL 820359, at *5. TSFR does not allege Starboard had to deliver specific money – as opposed to a sum of money. *Kerrigan v. ViSalus, Inc.,* 112 F.Supp.3d 580, 615-16 (E.D. Mich. 2015). (plaintiff did not state a sufficient common-law conversion claim for the conversion of money against defendants because, among other things, "Plaintiffs [did] not allege that any of those Defendants received the 'specific money' that Plaintiffs had paid to [Defendant]). Nothing in the APA or Amendments supports a claim that TSFR is entitled to specific money in the Brinks' safes.

TSFR's common law conversion claim also fails because it does not allege that Starboard's initial exercise of domain over the property was wrongful. When a plaintiff alleges that defendant wrongfully converted

13

money, plaintiff must allege that defendant "must have obtained the money without the owner's consent to the creation of a debtor-creditor relationship," and "must have had an obligation to return the specific money entrusted to his care." *Lawsuit Financial, L.L.C. v. Curry,* 261 Mich. App. 579, 591 (2004).

Here, TSFR consented to the debtor-creditor relationship by allowing Starboard to keep funds initially. The parties knew: (1) Brinks' safes had not been reprogramed by the time of closing; and (2) TSFR deposits would go into Starboard's accounts. The parties' contract documents were drafted with the possibility in mind that TSFR revenue might be deposited to the Brinks' accounts. *See Fourth Amendment.* "The defendant must have obtained the money without the owner's consent to the creation of a debtor and creditor relationship." *Lawsuit Fin., L.L.C. v. Curry,* 261 Mich. App. 579, 592, 683 N.W.2d 233, 241 (2004); *Hogue v. Wells,* 180 Mich. 19, 24, 146 N.W. 369 (1914) (conversion claim supported when defendant obtained the money without the owner's consent to the creation of a debtor and creditor relationship). TSFR does not allege that the funds were initially obtained without its consent; the parties agreed that Starboard would have possession of the funds before remitting them.

TSFR fails to state a claim for common law conversion.

### 2. Statutory Conversion

To assert statutory conversion in Michigan, a plaintiff must allege a common law conversion claim and state "that the defendant had 'actual knowledge' of the converting activity." *Id*. TSFR did not state a valid common law conversion claim, and it fails to allege actual knowledge.

Michigan's conversion statute states:

(1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorneys' fees:

(a) Another person's stealing or embezzling property or converting property to the other person's own use.
(b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.

Mich. Comp. L. § 600.2919a.

TSFR merely concludes that Starboard knowingly received, possessed, and converted funds. (Compl. ¶ 55.). But, TSFR must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Assoc. of Cleveland Fire Fighters,* 502 F.3d at 548 (citing *Twombly,* 127 S.Ct. at 1964-65). TSFR does not specify which action – receipt or possession of funds – forms the basis of its statutory conversion claim. Furthermore, it does not clarify which money was statutorily converted or when. For example, TSFR does not state whether

15

Starboard committed statutory conversion when money was deposited in the Brinks' safe prior to switching the licensee; or whether Starboard committed statutory conversion in taking some other action about some other amount of money obtained at some other time.

In response, TSFR alleges a duty separate from the parties' contract – Starboard had no right or title and was only a temporary fiduciary. However, the allegation that the "defendants did not live up to their…obligations" is not an allegation that supports a conversion claim. *Id*.

It does not appear that TSFR could properly state a claim for statutory or common law conversion – even if its complaint is amended and re-filed with the court – because its conversion claim is based wholly on its breach of contract claim.

Count I is dismissed with prejudice.

**D. Economic Loss Doctrine Would Not Bar Plaintiff's Fraud In The Inducement Claim If It Were Properly Pled. The Doctrine Would Bar TSFR's Conversion Claim**

Starboard argues that TSFR's tort claims — count I (common law/statutory conversion) and count III (fraud in the inducement) — are barred under Michigan's economic loss doctrine.

The economic loss doctrine prohibits a contracting party from bringing tort claims that are factually indistinguishable from breach of contract claims. *See Hart v. Ludwig,* 347 Mich. 559, 567, 79 N.W.2d 895 (1956). The Michigan Supreme Court adopted the economic loss doctrine in *Neibarger v. Universal Coops.,* 439 Mich. 512, 486 N.W.2d 612 (1992). The doctrine states that "[w]here a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic' losses." *Id.* at 520–521, 486 N.W.2d 612. It "bars all tort remedies where the suit is between an aggrieved buyer and a [nonperforming] seller, the injury consists of damage to the goods themselves, and the only losses alleged are economic." *Sullivan Indus., Inc. v. Double Seal Glass Co., Inc.,* 192 Mich.App. 333, 480 N.W.2d 623, 627 (1991); *Neibarger v. Universal Coops., Inc.,* 439 Mich. 512, 486 N.W.2d 612, 615 (1992).

Fraud in the inducement is an exception to the economic loss doctrine. *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.,* 209 Mich.App. 365, 370–71, 532 N.W.2d 541, 544 (1995). However, the Court determined it has not been sufficiently pled. If TSFR amends its complaint to state a sufficient fraud in the inducement claim, the economic loss doctrine will not bar it.

17

The economic loss doctrine would, however, bar TSFR's conversion claims. This is another reason for the court to dismiss them, since those claims are indistinguishable from TSFR's breach of contract claim.

### E. Merger Clause Does Not Preclude A Properly Pled Fraud Claim

Starboard relies on *UAW-GM Human Resource Center v. KSL Recreation Corp.* to suggest that an integration clause bars fraud claims unless the alleged fraud invalidates the integration clause itself under Michigan law. TSFR argues that its fraud claim is not barred by the merger clause because Michigan law recognizes an exception to an integration clause's conclusiveness in cases of fraud.

The parties do not dispute that the APA contains a merger agreement. *See APA Section 11.6* ("This Agreement constitutes the entire understanding among the parties with respect to the subject matter of this Agreement and supersedes all other agreements, whether written or oral, among the parties.").

TSFR's allegations of fraud in the inducement – if properly pled – could invalidate the merger clause. In Michigan, evidence of a prior oral agreement is not admissible under the parol evidence rule. *UAW-GM Human Resource Center v. KSL Recreation Corp.*, 228 Mich. App. 486, 492 (Mich. App. 1998) ("parol evidence of contract negotiations, or, of prior or contemporaneous

agreements that contradict or vary the written contract, is not admissible to vary the terms of a contract which is clear and unambiguous"). However, the parol evidence and merger clause rule applies when there are no allegations of fraud which would invalidate the contract or merger clause itself. The *UAW-GM* court stated:

> For these reasons, we hold that when the parties include an integration clause in their written contract, it is conclusive and parole evidence is not admissible to show that the agreement is not integrated except in cases of fraud that invalidate the integration clause...

*Id.* at 418. (Emphasis added).

Starboard's reliance on *UAW* is misplaced. Michigan law recognizes an exception to an integration clause's conclusiveness in cases of fraud. *See JAC Holding Enterprises, Inc. v. Atrium Capital Partners, LLC*, 997 F.Supp.2d 710, 730 (E.D. Mich. 2014) ("The presence of a merger clause in a written contract will not preclude a claim for fraud in the inducement where the plaintiff can show that it would have avoided the agreement entirely under the terms ostensibly agreed to, in the absence of the defendant's fraudulent representations"); *Ramirez v. IBM Corp.*, 829 F.Supp.2d 555, 561 (E.D. Mich. 2011).

The Court finds that the existence of an integration clause would not preclude a properly pled fraud in the inducement claim.

## V. CONCLUSION

Consistent with the above conclusions, the Court:

(1) **GRANTS** Levy's motion to dismiss count I statutory/common law conversion and count II breach of contract **with prejudice**;

(2) **DENIES** Starboard's motion to dismiss Count II breach of contract;

(3) **Grants** Starboard's motion to dismiss count I statutory/common law conversion **with prejudice**; and

(4) **Grants** Levy and Starboard's motion to dismiss count III fraud in the inducement **without prejudice**.

TSFR may file an Amended Complaint to allege fraud in the inducement on or before November 13, 2019.

Any amended complaint filed by TSFR that includes fraud in the inducement must set forth separate counts against Starboard and Levy.

**IT IS ORDERED**.

s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: October 30, 2019